## Wytheville

NORFOLK SAVINGS & LOAN CORPORATION V. A. J. RUSSO.

June 10, 1937.

Present, All the Justices.

The opinion states the case.

*Henry J. Lankford*, for the plaintiff in error.

No appearance for the appellee.

HOLT, J., delivered the opinion of the court.

In the trial court there was a judgment for the defendant. Plaintiff has appealed.

On January 10, 1933, the defendant A. J. Russo filed his voluntary petition in bankruptcy. At that time he was indebted to the Norfolk Savings & Loan Corporation, plaintiff in error here, in the sum of $325, evidenced by his note of date June 22, 1932. On this note the name of Frank Klepper appears as co-maker. Russo was also bound as co-maker on three other notes made by members of his family, insolvent like himself, and held by the plaintiff corporation. These three notes, together with the $325 note, in the aggregate amounted to $1,253. The $325 note was secured by trust deed on two vacant lots at Virginia Beach of doubtful value. In this bankruptcy proceeding Russo was relieved from his personal obligation to the plaintiff, although it was permitted to retain its lien on this Virginia Beach property.

This then was the situation: Russo was then no longer legally liable on this $325 note or on any of the other notes executed by members of his family and himself to the plaintiff corporation, but Klepper, co-maker of the $325 note, was liable, was solvent and could be made to pay.

Plaintiff thereupon called upon Klepper for payment, and upon his failure to do so, placed this note in the hands of its attorney for collection. Klepper took the matter up with Russo, whereupon a conference was held between A. L. Decker, secretary and manager of the Loan Corporation, Mr. Lankford, its attorney, Russo and Klepper and his attorney. This conference lasted for about two hours, and so it is fair to believe that matters were fully considered and discussed. Its plain purpose was to devise some relief for Klepper, who, as we have seen, was solvent and could have been made to pay the entire debt. In the record testimony appears in narrative form. Russo said:

"That he was a draftsman in the Norfolk Navy Yard, which position he had held for a number of years; that he was not indebted to plaintiff in any amount; that after he had gone into bankruptcy on January 10, 1933, plaintiff called upon Klepper for payment of the $325 note; that he did not want Klepper to have to pay any part of his (defendant's) note, so agreed after a conference lasting about two hours at plaintiff's bank, on September 6, 1933, to sign a new $500 note in order to get Klepper released from the $325 note, and that Klepper gave a new $100 note to be held as collateral to said $500 note, a written stipulation as to Klepper's release being incorporated in the $500 note as testified to by A. L. Decker; that he had abandoned all interest in said lots and never expected to realize anything out of them; * * *."

He also said that he agreed to attend this conference only on condition that he was to incur no personal liability and that into this $500 note which he signed was incorporated a provision to the effect that the plaintiff would look only to the $100 collateral note, and that he, the maker of the $500 note, was not to be held personally liable thereon or on anything else. This note was three times curtailed and renewed by Russo; namely, on October 6, 1933, on November 6, 1933, and on December 6, 1933. The renewal notes given on these three dates were for these three sums: $492.45, $484.92, and $477.30. Afterwards Klepper made certain payments thereon so that the unpaid principal balance as of September 17, 1935, was thereby reduced to the sum of $411, that being the amount of the plaintiff's claim here asserted, together with interest and a 10 per cent attorney's fee. The note sued upon contained no stipulation relieving Russo from liability; that is to say, the note of December 6, 1933. Russo's statement is that it was handed him by Decker, who told him that this note was like the note for which it was given in renewal. He did not read it, although he is an educated

man and a draftsman in the Norfolk Navy Yard. All of the old notes taken up by renewals were delivered to Russo but were not produced in evidence.

No fraud is charged in his statement of defense. That is this:

"* * * it was distinctly understood and agreed between the plaintiff and the defendant that there was to be no personal liability upon the defendant on account of the note executed by him and described in the warrant, but the plaintiff, in the event the defendant failed to pay said note, was to accept the collateral security deposited with the plaintiff by the defendant in full of any and all personal responsibility on said note; * * *."

With non-essentials brushed away, Russo's claim amounts to this: Klepper was liable on the $325 note upon which Russo's liability had been cancelled in bankruptcy. Klepper was solvent, his liability was not questioned, and the plaintiff's claim against him had been placed with an attorney for collection. Thereupon in conference it was agreed that if Klepper would sign a new collateral note for $100, no further liability should rest upon him, provided that Russo would execute a note for $500 into which was written a stipulation to the effect that he, Russo, should not have to pay the $500 which he promised there to pay.

That account of this transaction is wholly unreasonable.

Plaintiff assigns other errors; it is not necessary that we consider them.

For reasons stated, the judgment of the trial court should be reversed and final judgment entered for the plaintiff. It is so ordered.

*Reversed.*